J-S27025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HENRY ATTICA | : | |
| | : | |
| Appellant | : | No. 3485 EDA 2015 |

Appeal from the Judgment of Sentence October 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009745-2012

BEFORE:    GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 13, 2017**

Henry Attica appeals from the judgment of sentence imposed on October 30, 2015, in the Court of Common Pleas of Philadelphia County.  A jury found him guilty of conspiracy-arson-danger of death or bodily injury, arson-danger of death or bodily injury, and risking catastrophe.[1]  The trial court sentenced Attica to an aggregate term of 23½ to 47 years' imprisonment. In this appeal, Attica raises 10 issues, in which he challenges (1) the Commonwealth's amendment of the information, (2) the denial of the motion for mistrial made during the prosecutor's opening statement, (3) the admission of testimony regarding of a voicemail message that had been deleted, (4) the denial of the motion for mistrial during trial where trial counsel made a standing objection,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903(c), 3301(a)(1)(i), and 3302(b).

(5) the trial court's ruling that precluded cross-examination of the co-defendant about his reduced sentence, (6) the denial of the motion for acquittal, (7) the trial court's jury charge, (8) the denial of the weight of the evidence claim, (9) the prosecutor's closing remarks, and (10) the discretionary aspects of his sentence. Based upon the following, we affirm.

The Honorable Timika Lane summarized the facts of this case, as follows:

> On April 27, 2012, Walter West (herein "Complainant") and his girlfriend, Lori Pugh, went to Old Philly Bar for a few drinks. After roughly fifteen minutes, Lori's son, James Attica (herein "James"), came to the bar and got into an argument with her over marijuana. James then got into an argument with the Complainant over money that the Complainant had owed him. The argument carried over to the street where James put his hands on Lori to push her and the Complainant later stepped between them. Lori testified that following the altercation, James walked the opposite way and that she and the Complainant went home. After returning to his home, located at 137 West Susquehanna Avenue, the Complainant testified that Lori received a threatening voicemail from James who stated that he was going to burn and break the windows of the Complainant's car. At approximately 10:00 p.m. that night, the Complainant stated that he saw [Attica] and James, [Attica's] nephew, drive by his house two or three times in a red Ford F150. The Complainant stated that he went to the bathroom and upon returning saw a red truck pass his house and observed his car ablaze. Once the fire department came and put out the fire, the Complainant saw [Attica] and James pass by again, laughing as if it was a joke. The Complainant's car was completely destroyed and subsequently towed away to AC Auto.

> James Attica next recounted his version of the incident during his in court testimony. He testified that following the argument, he went to another bar to borrow a pedal bike so he [could] break the Complainant's car windows. When James arrived at the bar, he told [Attica] about the argument between

him and the Complainant. James testified that [Attica] told him "… [he] isn't going to get away with this shit." James and [Attica] then left in [Attica's] red Ford F150 truck and went to the gas station to fill up a container with gasoline. James testified that [Attica] dropped him off at his house because he did not want to go to the Complainant's house. Later that evening, [Attica] drove James by the Complainant's home and James saw the Complainant's burnt vehicle. He stated that he was not in the truck with [Attica] when the car was burned. James pleaded guilty to the crimes of conspiracy and criminal mischief on March 26, 2015.

The Commonwealth called Lieutenant Robert Crowe, an expert witness, to testify. Lieutenant Crowe is an assistant fire marshal with 20 years of experience as a firefighter and has conducted over thousands of investigations. He determined that something was poured on the windshield and came down onto the exterior panel of the Complainant's vehicle and then onto the ground. He testified that thermal patterns on the vehicle were indicative of some sort of accelerant[1] being applied to the front

---

[1] Lieutenant explained that an accelerant is gasoline, kerosene, lighter fluid, or some other type of igniting liquid.

---

of the vehicle and ignited, and that this was something that could not have happened accidently on a car by itself. Further, he expressed that such a fire can extend to nearby trees, vehicles, or buildings. Likewise, Lieutenant Andry Metallus testified that he was concerned that the fire could extend to nearby structures, trees and cars. He further testified that the burn marks reflect that the fire was incendiary in nature and not mechanical.

Trial Court Opinion, 5/20/2016, at 3–5 (record citations omitted). As stated

above, the jury found Attica guilty of conspiracy, arson-danger of death or

bodily injury, and risking catastrophe. Attica was sentenced to 23½ to 47

years' imprisonment and, following the denial of Attica's post-sentence motion, this appeal followed.[2]

Attica first argues the trial court abused its discretion "where it permitted the Commonwealth to amend the criminal complaint to include the charge of risking a catastrophe, 18 Pa.C.S.A. Section 3302(b), immediately prior to [Attica's proceeding to trial] before the jury, which prejudiced [Attica's] right to a fair trial."[3]  Attica's Brief at 22.

_____

[2] Attica filed a timely appeal on November 18, 2015.  On December 23, 2015, the trial court granted an extension of time for Attica to file a Pa.R.A.P. 1925(b) statement.  Attica's Rule 1925(b) statement was filed on February 4, 2016.

[3] Section 3302 of the Crimes Code provides:

> **(a)** *Causing catastrophe.* — A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage, including selling, dealing in or otherwise providing licenses or permits to transport hazardous materials in violation of 75 Pa.C.S. Ch. 83 (relating to hazardous materials transportation), commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

> **(b)** *Risking catastrophe.* — A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S. § 3302.

"The decision of whether to allow the Commonwealth to amend the Informations is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error." ***Commonwealth v. Small***, 741 A.2d 666, 681 (Pa. 1999), *cert. denied*, 531 U.S. 829 (2000).

At the relevant time, Pennsylvania Rule of Criminal Procedure 564 provided:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564. This Court has explained:

> [T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. The test to be applied is:
>
> > Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.
>
> ****
>
> In reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario

which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006) (citations omitted). The factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* at 1223 (citation omitted).

Here, the Complaint, filed May 12, 2012, alleged that the crimes occurred on April 29, 2012, and the acts "committed by [Attica]" were:

AT 137 SUSQUEHANNA AVENUE, THE DEFENDANT, IN CONCERT WITH ANOTHER, INTENTIONALLY THREW A SUBSTANCE ONTO A CAR OWNED BY THE COMPLAINANT, WALTER WEST, THAT CAUSED THE CAR TO BECOME ENGULFED IN FLAMES.

Complaint, 5/12/2012. The Complaint charged Attica with, *inter alia*, "Causing/Risking Catastrophe," in violation of 18 Pa.C.S. § 3302. In the Information, which was filed on September 6, 2012, Attica was charged with, *inter alia*, Causing Catastrophe, 18 Pa.C.S. § 3302(a).

On the day of trial, immediately before the jury was brought into the courtroom to begin hearing opening statements, the Commonwealth made its oral request for amendment of the information to include the charge of Risking Catastrophe.[4]  While Attica argues to this Court that the amendment of the information to include the charge of Risking Catastrophe "necessitated a change in defense strategy that did not allow the Defense ample notice and preparation,"[5] Attica did not request a continuance.

Here, the amendment did not change the factual scenario or add new facts that were previously unknown to Attica.  We agree with Judge Lane that "the amended charge, Risking a Catastrophe, clearly involved the same basic elements and evolved from the same set of facts as the original charge [of Causing Catastrophe]."  Trial Court Opinion, 5/20/2016, at 6.  **See Small supra,** 741 A.2d at 681 (upholding amendment to criminal information to include a charge of attempted rape after the rape charge was dismissed).  Accordingly, we conclude the trial court did not err in granting the Commonwealth's motion to amend the information.

Attica next argues that the trial court abused its discretion in denying his motion for mistrial

> where during counsel's opening statements to the jury the prosecutor opined that [Attica] is a white racist, who set the complainant's car on fire because the complainant was an African-

---

[4] **See** N.T., 8/19/2015, at 4.

[5] Attica's Brief at 25.

American man that was romantically involved with [Attica's] deceased brother's widow, an unsubstantiated declaration which had a prejudicial effect that outweighed its probative value, thereby denying [Attica's] right to a fair trial.

Attica's Brief at 27.

Here, Attica's counsel made a motion for mistrial during the prosecutor's opening remarks, as follows:

> MR. GRENELL: It probably doesn't matter to you that James Attica is white. And it probably doesn't matter to you that Walter West is black.
>
> MR. BROWN: Objection. Move for a mistrial, Your Honor.
>
> THE COURT: Your standing objection is noted. Continue, Mr. Grenell.
>
> MR. GRENELL: But it does matter to one person in this room. It matters to Henry Attica. Quite frankly --
>
> MR. BROWN: Objection. No evidence to that, Your Honor.
>
> THE COURT: Again, your standing objection is noted.
>
> MR. GRENELL: Because quite frankly, Henry Attica burned down Walter West's car because he didn't like the fact that a black man was dating his sister-in-law. You don't have to take that from me. That's not supposition. It's not a guess. You'll hear it from Walter [West]. You'll hear it from Lori [Pugh]. And you'll hear it from James [Attica].
>
> It doesn't matter who these people are. It doesn't matter the color of their skin except to the one person in this room, and that's Henry Attica.

N.T., 8/19/2015, at 20–21.

Preliminarily, we state the legal principles that guide our review:

> It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to

the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict.

***Commonwealth v. Bronshtein***, 691 A.2d 907, 917 (Pa. 1997) (citations omitted), *cert. denied*, 522 U.S. 936 (1997).

A prosecutor's opening statements must be based on evidence that she plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions. However, a prosecutor's opening statements may refer to facts that she reasonably believes will be established at trial. Additionally, the prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. Relief will be granted for prosecutorial misconduct only where the unavoidable effect of the prosecutor's conduct was to prejudice the jury so as to form in their minds a fixed bias towards the accused and to impede their ability to objectively weigh the evidence and render a true verdict.

***Commonwealth v. Begley***, 780 A.2d 605, 626 (Pa. 2001) (citations omitted).

In rejecting Attica's claim, the trial court set forth the relevant case law and concluded:

The prosecution provided the testimony of Walter West, James Attica, and Lori Pugh that would suggest racially-charged motives for [Attica's] actions in burning the Complainant's car. Based on the foregoing testimonies, the prosecutor made a reasonable inference that [Attica's] conduct was racially motivated. The Court properly found that the prosecutor's opening statements did not give rise to such prejudice as to prevent the finding of a true verdict. Therefore, the trial court did not abuse its discretion in denying [Attica's] motion for mistrial due to prosecutor's statements during opening argument.

Trial Court Opinion, 5/20/2016, at 8.

- 9 -

We agree with the trial court that the prosecutor's **opening statements** were based on inferences he believed from the testimony he intended to present at trial. The prosecutor believed several Commonwealth witnesses would testify that Attica did not like the fact that a black man, Walter West, was dating his sister-in law. In fact, Walter West testified that Attica had called him "the N-word," and that Attica had stated, "that N-word is dating my dead brother's wife or ex-girlfriend." N.T., 8/19/2015, at 62, 63.[6] Lori Pugh's son, James Attica, also stated Attica had a problem with Lori Pugh dating Walter West "[b]ecause he's black." *Id.* at 116. As such, we are not persuaded the prosecutor's remarks were mere assertions intended to inflame the jury. The trial court determined the opening remarks of the prosecutor did not prejudice the fact finders and, on this record, we find no abuse of discretion. Accordingly, we reject Attica's second claim. *See Bronshtein, Begley, supra*.

In his third issue, Attica contends the trial court abused its discretion in admitting hearsay testimony when Walter West testified

> regarding [an] alleged voicemail message of co-defendant [James Attica, to his mother, Lori Pugh,] in which the co-defendant allegedly called [Walter West] an N-word, threatened to burn [Walter West's] car and break out [his] car windows, where the voicemail message was the best evidence but was not available for trial, and this evidence would not be admissible under any hearsay exception, thereby denying [Attica's] right to a fair trial.

---

[6] Lori Pugh was never married to Attica's brother, James Attica, Sr. N.T., 8/19/2015, at 136. She was with Attica's brother for almost 28 years. *Id.* at 89.

- 10 -

Attica's Brief at 30. Attica argues:

> When the Complainant, Walter West and Lori Pugh returned home after arguing with James Attica at the Old Philly Bar, [James] Attica allegedly left a voice mail message on Lori Pugh's cell phone, in which he described [Walter West] as a "nigger" and threatened to burn his car and break out its windows. The voice mail message was not introduced at trial, because prior to trial it was deleted by Ms. Pugh.
>
> The trial court permitted [Walter West] to describe the alleged contents of the voice mail message, over the objection of the defense, which argued that admission of the hearsay was inadmissible due to the best evidence rule. Clearly, the trial court's admission of this hearsay testimony was error.

Attica's Brief at 30–31.

"At common law, the 'best evidence' rule limited proof of the terms of a writing to production of the original document, if the terms of the instrument were material to the issue under review, unless the original was shown to be unavailable through no fault of the proponent." *Commonwealth v. Dent*, 837 A.2d 571, 588-89 (Pa. Super. 2003), *citing **Commonwealth v. Fisher***, 764 A.2d 82, 87-88 (Pa. Super. 2000). The "best evidence" rule is codified in the Pennsylvania Rules of Evidence Rule 1002, which provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002.

This Court has observed that "[i]f the Commonwealth does not need to prove the contents of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the

original writing or recording." **Dent, supra**, 837 A.2d at 590. *citing* **Fisher, supra** (holding Commonwealth was not required to introduce original recordings from voice mail system where phone messages did not provide proof of **elements** of offenses charged).

Furthermore, "[w]hen an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." **Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999), *cert. denied*, 531 U.S. 829 (2000). "[A]n out-of-court statement offered to explain a course of conduct is not hearsay." **Commonwealth v. DeHart**, 516 A.2d 656, 666 (Pa. 1986).

Here, the voicemail statement was offered to show its effect on the listener, Walter West, who, as a result, began to stand watch over his car and, subsequently, saw it being set on fire,[7] and not to establish any elements of the offenses charged. **See also Commonwealth v. Antidormi**, 84 A.3d 736, 752 (Pa. Super. 2014) (citation omitted) ("Pennsylvania courts are not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.").

---

[7] **See** N.T., 8/19/2015, at 48–50.

- 12 -

Accordingly, we reject Attica's challenge to the court's admission of the testimony of Walter West concerning the voicemail of James Attica.

Nor do we find merit in the fourth issue raised by Attica, in which he claims:

> The trial court abused its discretion in denying [his] motion for mistrial, where [Attica's counsel] made a standing objection to the admission of testimony that [Attica] allegedly called the complainant [Walter West] an N-word, as such evidence had a highly prejudicial impact which greatly outweighed its zero probative value, thereby prejudicing [Attica's] right to a fair trial.

Attica's Brief, at 33.

As discussed above with regard to the second issue, concerning the denial of the motion for mistrial made during the prosecutor's opening, Walter West and James Attica testified about Attica's prior statements using an "N-word" in discussing Walter West. *See* N.T., 8/19/2016, at 61–63 (direct examination of Walter West), 106, 109, 110 (direct examination of James Attica).

During the direct examination of Walter West, trial counsel objected and a sidebar was held in the judge's chamber. N.T. 8/19/2016, at 62. Later, at sidebar, trial counsel put his objection on the record:

> MR. BROWN: Your Honor, when we were at sidebar earlier, there was an objection. I objected to the Commonwealth mentioning or getting into evidence of my client's alleged statements on some earlier date. The testimony that eventually came in was that my client used the N-word to describe Walter West.
>
> I objected in the back that it was irrelevant to today's allegation about the car. It was before April 27, 2012, and had

- 13 -

nothing to do with even setting the car on fire or agreeing to do so and that it was extremely prejudicial, injecting racial comments allegedly by my client into this case. It was unduly prejudicial. I believe that was [the] gist of our discussion in the back.

THE COURT: And then, Mr. Grenell, can you state your position as well?

MR. GRENELL: Your Honor, I think this, obviously, is very probative. While not necessary as an element of the crime, motive, of course, is important in every single trial.

And it is my contention, my theory of the case, that the motive in this case is the racial animosity between the defendant and the victim in this case is what drove the defendant to do a crime as heinous, quite frankly, as arson.

There's testimony to that not only by Mr. West, but there will be testimony to that by other witnesses, which is why I think its probative value is going to outweigh the prejudicial effect in this case.

THE COURT: Okay. Thank you.

N.T., 8/19/2016, at 96–97.

Case law supports the Commonwealth's position that evidence of motive is relevant.[8] *See Commonwealth v. Bryant*, 574 A.2d 590, 595 (Pa. 1990) ("Evidence to prove motive, intent, plan, design, ill will or malice is relevant in a criminal case.") (*citing Commonwealth v. Gwaltney*, 442 A.2d 236 (Pa. 1982)).

_____

[8] We acknowledge that Attica was not charged with a hate crime, *see* 18 Pa.C.S. § 2710, but that fact does not preclude the Commonwealth from presenting evidence of motive for Attica's crimes against Walter West.

- 14 -

Additionally, although Attica contends in his brief that the trial court "did not endeavor to ameliorate the prejudicial effect with a cautionary instruction,"[9] Attica did not request such an instruction. Consequently, he has waived his argument that the court erred by not issuing one. *See **Commonwealth v. Wholaver**, 989 A.2d 883, 892 (Pa. 2010) ("[A]lthough trial counsel objected to the admission of this evidence, he did not request a limiting instruction; therefore, the issue of trial court error for not giving such instruction is waived."), *cert. denied*, 562 U.S. 933 (2010).

In sum, we discern no basis upon which to disturb the decision of the trial court. Accordingly, we reject Attica's contention that the trial court abused its discretion in denying his motion for mistrial and admitting testimony regarding Attica's use of a racial slur.

In his fifth issue, Attica contends the trial court abused its discretion in limiting cross-examination of the co-defendant, James Attica,

> regarding his reduced exposure as the result of the Commonwealth's decision to *nolle prosequi* multiple felony charges against [James Attica], including arson and risking a criminal catastrophe, in exchange for a negotiated guilty plea to criminal mischief and criminal conspiracy, second degree misdemeanors, which prejudiced [Attica's] right to establish [James Attica's] bias in testifying against [Attica], thereby denying [Attica's] right to a fair trial.

Attica's Brief at 39.

---

[9] Attica's Brief at 38.

During cross-examination of James Attica, the following exchange occurred:

BY MR. BROWN:

…

Q. And moments ago, the attorney for the Commonwealth went over with you the agreement for 11½ to 23 months of incarceration followed by 2 years of probation that you're going to receive on next Tuesday, right?

A. Yes.

Q. And do you have – can you look at Page 3 of that exhibit. Do you see Paragraph 6 and 7?

A. Yes.

Q. And that recites, once again, the crimes in your agreement are criminal mischief M2 and conspiracy M2. Do you see that on Paragraph 6?

A. Yes, I do.

Q. And Paragraph 7, the maximum statutory sentence that you could receive on those two would be a total of 4 years incarceration?

A. Yes.

Q. And even within that maximum -- and referring back to Paragraph 11 on Page 4 -- is the agreed upon sentence that you're going to get?

A. Yes

Q. All right. But that is a significant discount –

MR. GRENELL: Objection. Sidebar, please.

THE COURT: Yes. Excuse us.

(A brief sidebar was held in the judge's chambers.)

N.T., 8/19/2016, at 118–119.

Thereafter, trial counsel resumed cross-examination, as follows:

> THE COURT:  You may proceed, Mr. Brown.
>
> MR. BROWN:  Thank you, Your Honor.

BY MR. BROWN:

> Q.  Mr. Attica, if you would look at page – the first page of C-16.
> Do you have that in front of you?
>
> A.  Yes.
>
> Q.  Do you see again, it's on the numbered paragraphs?  See the – starting with your name.  See on the third line there, your name is there, James Attica?
>
> A.  No, I do not.
>
> ****
>
> Q.  Let me try this:  If I read some language, you tell me if you see it right there in the agreement.
>
> A.  Okay.
>
> Q. "James Attica hereby enters into the following agreement for the purpose of resolving the crimes of arson, risking catastrophe, conspiracy, and criminal mischief committed by James Attica and others," and so forth.
>
> Do you see that language?
>
> A.  Yes.
>
> Q. And you agree that is part of the C-16 memorandum that you signed, right?

Q. And that was not reached until you were facing the music. You were seated with my client with a different jury already selected on March – whatever – 24th, right?

A. Yes.

Q. And those were, in fact, the charges that you started out facing and were facing until March of this year, right?

A. Yes.

Q. And you didn't reach this agreement – what's the date? March 26th? Page 5 – number Page 5 of that agreement? See with all the signatures?

A. Yes.

Q. March 26th of this year, right?

A. Yes.

Q. And then facing those charges that are listed in the beginning of the memorandum, you reached an agreement with the Commonwealth that reduced your exposure to what's in Paragraphs 6, 7, and 11, right?

A. Yes.

…

*Id.* at 119–121.

After James Attica was excused, the following on-the-record discussion

took place:

MR BROWN: I think there were two sidebars. In one of them I was attempting – I had just attempted to cross-examine James Attica about the beginning of his plea agreement. And although the Commonwealth got into the years of the sentence and I repeated that, I was not permitted by the Court to get into the number of years that James Attica had previously been facing to compare it to the significantly reduced – something around the order of one-tenth or less of his original sentence. So I wasn't

- 18 -

permitted – we went in the back and I think Your Honor's ruling was I could name the offenses, which I did, but I could not directly examine James Attica about the years he had been facing in comparison to the years he was going to get.

MR. GRENELL: And, Your Honor, I made the objection because I stated the sentence that he was going to get, not actually this exposure. And as Your Honor reminds every jury and tells every jury in the beginning that they are not to consider the penalties that a potential defendant is facing in a case, which if we had gone into the actual exposure of what this codefendant was facing, it would be exactly the kind of information that they are prohibited from hearing, and that was the basis for my objection, which you sustained.

THE COURT. Okay. …

*Id.* at 132–133.

It is well settled "'that a witness may be cross-examined as to any matter tending to show the interest or bias of that witness.'" ***Commonwealth v. Davis***, 652 A.2d 885, 887 (Pa. Super. 1995) (citation omitted). "Where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, it is particularly important that the defendant be accorded an adequate opportunity to demonstrate through cross-examination that the witness is biased." *Id.* at 888.

Based on our review, we find the trial court erred in limiting cross examination testimony concerning James Attica's potential exposure on the basis of the reasons offered by the prosecutor at sidebar. Nevertheless, we conclude the error was "harmless error." "When the record reveals that an error did not prejudice the defendant, or that the prejudice was so minimal that, beyond a reasonable doubt, it did not influence the jury, we have held

the error harmless." ***Commonwealth v. Story***, 383 A.2d 155, 164–65 (Pa. 1978). Here, notwithstanding the trial court's ruling, the jury was able to analyze the testimony of James Attica in light of the "significant discount" he received by virtue of his plea agreement. N.T., 8/19/2016, at 119.

It is important to note that the trial court did not strike the question posed to James Attica that the agreed upon sentence was a "significant discount." ***Id.*** Furthermore, the jury heard that the charges James Attica had faced were "arson, risking catastrophe, conspiracy and criminal mischief,"[10] and that he would receive an 11½–23 month sentence and 2 years' probation based upon his guilty plea to "criminal mischief M2 and conspiracy M2." Attica's attorney elicited James Attica's admission that the agreement "reduced [his] exposure ...."[11] As a result of this testimony, Attica's counsel argued to the jury that James Attica entered into an agreement "for the purpose of resolving the crimes of arson, risking a catastrophe, conspiracy, and criminal mischief committed by James Attica," and "strikes a deal that brings him down to two misdemeanors of criminal mischief -- ... and a conspiracy." N.T., 8/20/2016, at 68–69. Attica's attorney further argued "That man, James Attica, has an incentive to save his own skin and pin the blame falsely on Henry Attica to get James Attica a better deal." ***Id.*** at 70.

---

[10] N.T., 8/19/2016, at 119.

[11] ***Id.*** at 121.

Accordingly, on this record, we conclude the trial court's error was harmless error because the cross examination that occurred after the objection sufficiently informed the jury of James Attica's potential bias in light of the benefit he received under the plea agreement. Therefore, Attica's fifth claim fails.

The sixth issue challenges the denial of Attica's motion for judgment of acquittal with respect to the charges of arson-danger of death or bodily injury[12] and risking a catastrophe[13] "because there was insufficient evidence to sustain the charges where there was no evidence presented of bodily injury, damage to an occupied structure, no evidence of putting a firefighter's life in

---

[12] Section 3301 of the Crimes Code provides, in relevant part:

**(a) Arson endangering persons.**

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; ….

18 Pa.C.S. § 3301(a)(1)(i).

[13] "A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means …." 18 Pa.C.S. § 3302.

danger, and no evidence that the fire would spread to an occupied structure." Attica's Brief at 45.[14]

The seventh issue challenges the trial court's jury charge on arson-danger of death or bodily injury and risking a catastrophe. In this regard, Attica argues that there was insufficient evidence to support either charge. *See* Attica's Brief at 48.

Judge Lane has fully addressed and properly rejected these issues in her Rule 1925(a) opinion, and further elaboration by this Court is unwarranted. *See* Trial Court Opinion, 5/20/2016, at 14–23. Therefore, we reject Attica's sixth and seventh issues on the basis of the trial court's discussion.

The eighth issue is a challenge to the weight of the evidence. Attica contends that "the jury's verdict … was so contrary to the evidence as [to] shock one's sense of justice, where the evidence was overwhelming that the lone arsonist in the case *sub judice* was the Co-defendant, James Attica, not the Appellant." Attica's Brief at 49. Attica argues (1) prior to the incident, James Attica got into an argument with Walter West, after which he threatened to burn Walter West's car and break out the car windows, (2) Attica was not present at the argument between James Attica and Walter West, (3) in the aftermath of the incident, Walter West reported to investigating

---

[14] Attica did not challenge the sufficiency of the evidence of his conspiracy conviction.

firefighters that he did not see the firebombing but suspected James Attica was the person responsible, without mentioning Attica, (4) Walter West subsequently reported to police and testified at the preliminary hearing that he actually observed James Attica pour gasoline onto the vehicle then set fire to it, while being driven by Attica, (5) Walter West recanted his preliminary hearing testimony at trial and testified he could not see who was inside the vehicle from which the accelerant was poured onto his vehicle, and (6) the Commonwealth's case-in-chief consisted primarily of the testimony of James Attica, who "had everything to gain by lying about [Attica] and everything to lose if he didn't," and agreed to testify against Attica more than three years after the incident. Attica's Brief at 50–51.

Our standard of review is well settled:

The Supreme Court has set forth the following standard of review for weight of the evidence claims:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

* * *

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them

> or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013) (quotation marks, quotations, and citations omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 2003 PA Super 123, 820 A.2d 795, 806 (Pa.Super. 2003) (quotation marks and quotations omitted).

*Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016).

> Here, the trial court opined:
>
> While there may be conflicting testimonies, it would only be proper to present the evidentiary record to the jury and let them determine the extent to which each is credible. Here, the jury believes the credible testimony of all of the Commonwealth's witnesses, including [Walter West], Lieutenant Crowe, Officer Marion Cienkowski, James Attica, and Lori Pugh. The guilty verdict in this case aligned with the evidence presented to the jury.

Trial Court Opinion, 5/20/2016, at 23.

At trial, Walter West testified that he saw Attica drive a red Ford F150 truck by his house with James Attica two or three times before the fire, and saw them drive by again after the fire was out. *See* N.T., 8/19/2015, at 48–51. He saw the truck drive by immediately prior to the car being ignited, but could not see into the truck from his vantage point. *See id.* at 88. Officer

Marion Cienkowski testified that on May 5, 2012, Walter West "came into the 25th District window and he stated that two males, whom he only knew by the names of Jimmy and Nicky [referring to Attica, *see* N.T., 8/19/2015, at 71] threw some sort of liquid on his vehicle and set the vehicle on fire." N.T., 8/20/2015, at 43. Lori Pugh testified that she was at her house with Walter West when she saw a red Ford 150 truck that she knew was Attica's drive by, *see id.* at 140, and that "when we looked back out the door, the car was on fire." N.T., 8/19/2015, at 140. Lieutenant Robert Crowe testified that "some type of accelerant" was applied to cause the care fire. *Id.* at 169. The testimony of Walter West, Officer Cienkowski, Lori Pugh, and Lieutenant Crowe corroborate the testimony of James Attica, that Attica intentionally set fire to Walter West's car. Therefore, we discern no abuse of discretion by the trial court in rejecting Attica's weight claim.

In the ninth issue raised in this appeal, Attica argues the trial court abused its discretion in denying his objection to the prosecutor's closing remarks "in stating his opinion that [Attica] was guilty … and failing to give a curative instruction, which prejudiced [Attica's] right to a fair trial." Attica's Brief at 52. Specifically, Attica's counsel objected to the following statement of the prosecutor:

> What's the common sense version of this story? That no matter which way you slice it, no matter which way you come down, no matter how you think that this actually happened, Henry Attica was at the heart of it all.

He was the one who committed these crimes. Henry Attica, you've been charged with arson, risking catastrophe, and conspiracy because you burned down Walter's car --

        MR. BROWN:  Objection, Your Honor.

        THE COURT:  Objection noted.  Continue.

        MR. GRENELL:  -- you burned down Walter's car in front of his own home and you set everybody in danger, everybody on that block, every firefighter that responded, everybody that was out there that day.

N.T., 8/20/2015, at 98–99.[15]

This Court has stated:

It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury, and must be free to present arguments with logical force and vigor. Counsel may comment upon fair deductions and legitimate inferences from the evidence presented during the testimony. Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, arguments from personal opinion as to the guilt of the accused are not proper.

****

[N]ot every remark by the prosecutor, even assuming it is intemperate or uncalled  for, requires a new trial. A prosecutor's comments do not amount to reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Moreover, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. In applying these standards on appellate review, we have explained that whether this standard has been violated by the language of the prosecutor is not in the first instance an

_____

[15] Because trial counsel did not request a cautionary instruction, the claim that the trial court erred in failing to give a cautionary instruction is waived. ***See Commonwealth v. Wholaver, supra***, 989 A.2d at 892.

appellate court's decision to make; rather, it is the duty of the trial judge to rule upon the comments and we are limited to reviewing whether the trial court abused its discretion.

***Commonwealth v. Raynor***, 153 A.3d 1049, 1059-60 (Pa. Super. 2016) (citation omitted).

> Here, the trial court reasoned:

> When the comment is simply a natural development of inferences made as a result of the evidence against the defendant, it would simply be effective oral advocacy to suggest the defendant's guilt. In this case, the prosecutor's statements were not so egregious as to impair the jury's ability to grant a true verdict and as such did not prejudice [Attica's] right to a fair trial.

Trial Court Opinion, 5/20/2016, at 25. On this record, we find no basis upon which to disturb the trial court's determination. "The prosecutor is free to argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence."

***Commonwealth v. Chamberlain***, 30 A.3d 381, 408 (Pa. 2011) (rejecting defendant's assertions of prejudice, premised on the prosecutor's closing argument stating, "You're guilty of murder. You are a murderer."), *cert. denied*, 132 S. Ct. 2377 (2012). Accordingly, we reject Attica's ninth claim.

In the final issue, Attica challenges the discretionary aspects of his 23½-to-47 year sentence. Attica contends "the trial court abused its discretion in imposing a manifestly excessive and unreasonable consecutive aggregate maximum sentence, where the sentence was substantially above the aggravated guideline range and did not reflect [Attica's] rehabilitative needs." Attica's Brief at 55 (Pa.R.A.P. 2119(f) statement).

It is well-established that "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. Hoch***, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). Here, Attica has complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). ***See Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa. Super. 2013). Furthermore, we find Attica's claim presents a substantial question. ***See Commonwealth v. Samuel***, 102 A.3d 1001, 1007 (Pa. Super. 2014) (appellant raised substantial question when he alleged sentence was excessive and court failed to consider mitigating circumstances). Therefore, we turn to examine the merits of Attica's discretionary sentencing claim.

In its opinion, the trial court thoroughly addressed the merits of Attica's challenge to the discretionary aspects of his sentence. ***See*** Trial Court Opinion, 5/20/2016, at 25–28. ***See also*** N.T., 10/30/2015, at 22-23. Based on our examination of the record, and applying our deferential standard of review, we find no abuse of discretion in this sentencing decision. ***See Commonwealth v. Walls,*** 926 A.2d 957, 961 (2007) ("proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion").

In conclusion, having examined the arguments of Attica and finding them to be meritless, we affirm.

Judgment of sentence affirmed.[16]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2017

---

[16] In the event of further proceedings, the parties are directed to attach a copy of the Honorable Timika Lane's May 20, 2016 Pa.R.A.P. 1925(a) Opinion to this Memorandum.